UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

In re:

VERHONDA K. WILLIAMS,

    Debtor.
_____/

Case No: 15-22082-EPK
Chapter 7

VERHONDA K. WILLIAMS,

    Plaintiff,

v.

NAVIENT SOLUTIONS, INC.,

    Defendant.
_____/

Adv. Pro. No.:

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Plaintiff, Verhonda K. Williams alleges violations of the Florida Consumer Collection Practices Act § 559.55 *et seq.* ("FCCPA"), the Fair Debt Collection Practices Act 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Telephone Consumer Protection Act 47 U.S.C. § 227 *et seq.*, the Order of Discharge, [DE 18], and seeks a determination of dischargeability and declaratory judgment against Navient Solutions, Inc. ("Defendant").

1.    Private student loan borrowers default on their loans all too often because of an almost non-existent labor market and the extensive challenges they face in finding and keeping steady employment. This bleak economic atmosphere significantly contributes to the growing number of defaults on private student loans, and as we sit here today, there is approximately $175 billion in student loan debt that is either delinquent or in default. U.S. Department of Education, Federal Student Loan Portfolio: Direct Loan and Federal Family Education Loan

Portfolio by Loan Status. https://studentaid.ed.gov/sa/sites/default/files/fsawg/datacenter/library/PortfoliobyLoanStatus.xls

2. Luckily for private student loan borrowers, filing bankruptcy is an option to get a financial "fresh start" by discharging their private student loan debt. While some student loans are non-dischargeable, a loan incurred for a bar review study course and living expenses is not a "student loan" or a "qualified education loan" and is dischargeable in bankruptcy.

3. Defendant is a private student loan servicer that acquired its servicing rights from Sallie Mae. Defendant services private student loans in Florida and is one of the largest private student loan servicers in the United States. Defendant services these loans subject to state and federal law designed to protect consumers from unscrupulous business practices, especially those borrowers in bankruptcy. Defendant is the critical link between the borrowers in bankruptcy getting their financial "fresh start" or spiraling deeper into financial debt.

4. Defendant knowingly violates federal and state law and it frustrates the ability of borrowers whose debts were discharged in bankruptcy from receiving their financial "fresh start" by attempting to collect private student loan debts that it knows have been discharged in bankruptcy, and more importantly, which the borrower no longer owes. Defendant damages these borrowers and leverages its position of power to achieve a profit—all at the expense of bankrupt borrowers.

5. As a private student loan borrower that satisfied her obligations in a chapter 7 bankruptcy, the Plaintiff brings this action to enforce her rights under federal and state law as well as this Court's Order of Discharge against Defendant.

**JURISDICTION AND VENUE**

6. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1334. Venue in this District is proper pursuant to 28 U.S.C. §1409.

7. This adversary matter is a core proceeding pursuant to 28 U.S.C. § 157.

**PARTIES**

8. Plaintiff, Verhonda K. Williams, is a natural person, and citizen of the State of Florida, residing in Boca Raton, Florida.

9. Defendant, Navient Solutions, Inc. (hereinafter referred to as "Navient" or "Defendant"), is a Delaware corporation that specializes in loan management, servicing and asset recovery with a principal address in Reston, Virginia.

**LEGAL STANDARD**

I. **FCCPA**

10. The FCCPA prohibits debt collectors from engaging in certain abusive practices in the collection of consumer debts. *See generally* Fla. Stat. § 559.72.

11. The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (*citing* Fla. Stat. § 559.552).

12. Specifically, the FCCPA states that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

13. The FCCPA creates a private right of action under Fla. Stat. § 559.77.

14. The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 559.55(8).

15. The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. *Id.* § 559.72. This language includes all allegedly unlawful attempts at collecting consumer claims. *Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. Dist. Ct. App. 1976).

16. The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

## II.   FDCPA

17. The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

18. The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

19. The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f.

20. The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

Van Horn Law Group P.A.
330 N. Andrews Ave. Ste. 450 Fort Lauderdale, FL 33301

21. The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

22. The FDCPA defines "debt collector" as "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6).

23. The FDCPA defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

24. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

**III.  TCPA**

25. According to the Federal Trade Commission's recent Biennial Report to Congress, the emergence of new communications technologies has caused the number of illegal calls to explode in the last four years. For example, Voice over IP ("VoIP") technology allows callers to make higher volumes of calls inexpensively from anywhere in the world through digital calls made over the internet.

26. The sheer volume of illegal telephone calls overwhelms the enforcement efforts of government agencies such as the Federal Trade Commission ("FTC") and the Federal Communications Commission. Consequently, private consumer enforcement actions, which Congress authorized when it enacted the Telephone Consumer Protection Act of 1991 ("TCPA"), play a critical role in combatting illegal telephone calls.

27. Through the TCPA, Congress outlawed telephone calls via automated, artificial, or prerecorded telephone calls in several contexts, including "to any telephone number assigned

to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(2).

28. 47 U.S.C. § 227(b) regulates calls using an artificial or prerecorded voice.

29. With respect to cellular phones, the statute prohibits artificial or prerecorded voice calls—other than emergency calls or calls placed with the prior express consent of the called party. *Id.* § 227(b)(1)(A).

30. Prior express consent is consent that is clearly and unmistakably conveyed by the call recipient to the party placing the call; implied consent is not sufficient.

31. While cellular telephone calls may be made with the prior express consent of the called parties, consent may be revoked orally or in writing. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014).

32. "[D]ebt collection calls are not exempt" under the TCPA for calls made to a cellular telephone service. *Id.* at 1255–54.

33. Persons who receive calls in violation of these provisions may bring an action to recover the greater of the monetary loss caused by the violation, or $500. *Id.* § 227(b)(3). If the Court finds the defendant willfully or knowingly violated § 227(b), the Court may increase the award to up to $1,500 per violation. *Id.*

**IV. Bankruptcy**

34. The chief policy behind the Bankruptcy Code is "providing the honest but unfortunate debtor with a fresh start." *United States v. Jones (In re Jones),* CIVIL ACTION NO. 97-A-1345-N, 1999 U.S. Dist. LEXIS 2621, at *16 (M.D. Ala. Feb. 23, 1999).

35. "Section 524 of the bankruptcy code operates as a post-discharge injunction against the collection of debts discharged in bankruptcy, and is appropriately characterized as

'the embodiment of the Code's fresh start concept.'" *Manzanares v. State Farm Fire & Cas. Co. (In re Manzanares)*, 345 B.R. 773, 781 (Bankr. S.D. Fla. 2006) (citations omitted).

36. "The protection afforded by the discharge is one of the '[c]ritical features of every bankruptcy proceeding.'" *Cent. Va. Cmty. College v. Katz*, U.S., 126 S. Ct. 990, 996, 163 L. Ed. 2d 945 (2006).

37. "[A] chapter 7 discharge affects all creditors by voiding the debtor's past liability for debts which are subject to the discharge, and permanently enjoins creditors from "chasing" debtors. *In re Manzanares*, 345 B.R. at 781.

38. Any "exceptions to [the] discharge [in bankruptcy] 'should be confined to those plainly expressed,' and construed narrowly against the creditor." *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)).

39. The Bankruptcy Code excepts from discharge a "qualified education loan" as defined in § 221(d)(1) of the Internal Revenue Code. 11 U.S.C. § 523(a)(8)(B). A "qualified education loan" is any indebtedness incurred solely to pay for "qualified higher education expenses," which are those expenses incurred to cover the "cost of attendance" at a title IV eligible institution. 26 U.S.C. § 221(d)(1).

40. The expenses to cover the "cost of attendance" include tuition, fees, room, board, books, and living expenses. § 472 of the Higher Education Act, 20 U.S.C. 108711.

41. A title IV eligible institution is one recognized by the Department of Education, under title IV of the Higher Education Act. *Id*.

Van Horn Law Group P.A.
330 N. Andrews Ave. Ste. 450 Fort Lauderdale, FL 33301

42. Private loans made to students to cover expenses[1] at non-title IV institutions or to cover expenses beyond the "cost of attendance" are **not** "qualified education loans" as defined in the Bankruptcy Code. *Campbell v. Citibank, N.A.* (*In re Campbell*), Nos. 14-45990-CEC, 15-01038-CEC, 2016 Bankr. LEXIS 928 (U.S. Bankr. E.D.N.Y. Mar. 24, 2016).

43. Such debts are merely consumer loans made to students and remain dischargeable under the Bankruptcy Code. *Id*.

44. Specifically, "the Bar Loan is not an 'educational benefit' within the meaning of § 523(a)(8)(A)(ii), and is not encompassed in any other exception to discharge set forth in § 523(a)(8), ***the Bar Loan is dischargeable***." (emphasis added) *Campbell v. Citibank, N.A.* (*In re Campbell*), Nos. 14-45990-CEC, 15-01038-CEC, 2016 Bankr. LEXIS 928 (U.S. Bankr. E.D.N.Y. Mar. 24, 2016).

## FACTUAL ALLEGATIONS

45. In 2008, Plaintiff entered Florida A&M University, College of Law and graduated in April 2011.

46. After graduation, Plaintiff applied for and received an $8,000.00 and $7,000.00 bar study loan to subsidize her income while preparing to take the Florida bar exam in July 2011.

47. Plaintiff used part of the proceeds from the bar study loan to pay for a full Barbri preparation course and a partial Kaplan PMBR course.

48. Plaintiff used the remaining proceeds to pay for her and her children's living expenses while she studied for the bar exam and to cover her accommodations while attending the bar examination.

---

[1] Such expenses include: (i) living expenses in excess of the amount determined necessary by the accredited college or university; (ii) money to pay for bar review classes for recent law school graduates; (iii) money to pay for expenses related to residency for recent medical school graduates; (iv) money to pay for a child's K-12 education; and (v) money to pay for unaccredited for-profit schools.

49. Plaintiff made payments on these private loans from September 2011 until June 2015, when she lost her job and could no longer afford to provide her children with basic everyday needs, much less make payments on the bar study loans.

50. On or about July 2, 2015, Plaintiff filed for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida.

51. In Schedule F of her petition, Plaintiff listed that she was indebted to "Navient Solutions" for $7,606.00 and $9,418.00 representing the amounts owed for her bar study loans.

52. After satisfying all of her obligations to effectuate a discharge of her debts, Plaintiff received a general discharge on October 14, 2015, [DE. 18].

53. After the Court ordered her bankruptcy discharged, the Plaintiff received a letter from Navient on December 2, 2015. A true and correct copy of the letter is attached as Exhibit "A."

54. The heading of the letter stated "**Loan(s) Not Discharged**" (emphasis original) and it advised the Plaintiff that Navient received notification of her bankruptcy discharge. *Id*.

55. In the letter, Navient advised the Plaintiff that "[b]ankruptcy doesn't always discharge student loans, and because your loan shown above wasn't discharged, you remain responsible for repaying the entire remaining balance." *Id*.

56. Additionally, Navient advised the Plaintiff that **"*[t]his is an attempt to collect* a *debt and information obtained will be used for that purpose.*"** (emphasis original).

57. The Plaintiff then received several bills from Navient demanding that she pay the previous unpaid principal balance of the bar study loans, including late fees and accrued interest charges. A true and correct copy of each bill is attached as Exhibit "B" and "C" respectively.

Van Horn Law Group P.A.
330 N. Andrews Ave. Ste. 450 Fort Lauderdale, FL 33301

58. On or about April 27, 2016, Plaintiff received a letter from Navient advising that her "private student loan referenced above is severely past due." A true and correct copy of the letter is attached as Exhibit "D."

59. The letter stated "[t]his notice is for private student loans only." *Id*.

60. Even if Navient had not advised the Plaintiff that it knew her bankruptcy was discharged, the Plaintiff included Navient in the creditor matrix. A true and correct copy of the creditor matrix is attached as Exhibit "E."

61. Navient also received notice of the Plaintiff's bankruptcy discharge because it was included in the Certificate of Notice, [DE 19].

62. At no time did the Plaintiff or the bankruptcy trustee ever classify the bar study loans as "qualified education loans." This is because "bar study loans" cannot be originated, characterized, or classified as a "qualified education loan" because Barbri and Kaplan are not title IV eligible institutions as that term is defined in 26 U.S.C. § 25A(f)(2) or Section 481 of the Higher Education Act. https://www.salliemae.com/student-loans/bar-study-loan/; http://help.kaptest.com/articles/Title_and_Text/Are-Kaplan-courses-tax-deductible/?q=tax+deductible&l=en_US&fs=Search&pn=1; https://www.irs.gov/pub/irs-pdf/p970.pdf.

63. Plaintiff has made no payments on the debt since filing for relief under chapter 7 of the Bankruptcy Code, and if the bar study loans were not dischargeable, she would not have filed for bankruptcy.

64. These facts leave no doubt that Navient knew the Plaintiff's bar study loans were discharged in bankruptcy, and that these loans were private student loans, yet it has continually harassed her by attempting to collect a debt she no longer owes.

Van Horn Law Group P.A.
330 N. Andrews Ave. Ste. 450 Fort Lauderdale, FL 33301

65. Additionally, from March 16, 2016, to April 3, 2016, Defendant, or an agent acting on behalf of Defendant, called the Plaintiff's cell phone (954) 798-5757 at least seventy-five (75) times attempting to collect the debt that was discharged in bankruptcy.

66. The Defendant, or an agent acting on behalf of Defendant, called the Plaintiff's cell phone from various different numbers including but not limited to (615) 432-4230, (615) 432-4229, and (512) 354-2001.

67. Defendant, or an agent acting on behalf of Defendant, left numerous pre-recorded messages on the Plaintiff's cellular phone.

68. Plaintiff is the subscriber and personally responsible for the cell phone account.

69. Even if Plaintiff previously provided Defendant with consent to call her cellular phone from an auto-dialer or with a pre-recorded message, the chapter 7 bankruptcy discharge revoked that consent.

70. Additionally, Plaintiff demanded Defendant to cease contacting her cellular phone. Plaintiff advised the Defendant that she was represented by counsel and all communication must go through him.

71. Defendant, or an agent acting on behalf Defendant, ignored Plaintiff's request and continued to call her cellular phone unrestrained.

## CLAIMS FOR RELIEF

### COUNT I:  DETERMINATION OF DISCHARGEABILITY

72. The bar study loans are not "qualified education loans" as defined by § 523(a)(8) of the Bankruptcy Code.

73. The bar study loans were not made under a government or non-profit loan program pursuant to § 523(a)(8)(A)(i).

-11-

Van Horn Law Group P.A.
330 N. Andrews Ave. Ste. 450 Fort Lauderdale, FL 33301

74. The bar study loans were not an obligation to repay funds received as an educational benefit, scholarship, or stipend pursuant to § 523(a)(8)(A)(ii).

75. The bar study loans were not a qualified educational loan as such phrase is defined in § 523(a)(8)(B) because:

   a. They were not incurred to pay for qualified higher education expenses pursuant to 26 U.S.C. § 221(d) or for the cost of attendance under 20 U.S.C. § 1087l;

   b. The Plaintiff was not an eligible student pursuant to 20 U.S.C § 1091(a)(1) or § 484(a)(1) of the Higher Education Act;

   c. Barbri is not an eligible educational institution under 26 U.S.C. § 25A(f)(2) or § 481 of the Higher Education Act; and

   d. Kaplan is not an eligible educational institution under 26 U.S.C. § 25A(f)(2) or § 481 of the Higher Education Act.

76. The bar study loans are therefore not excepted from discharge under § 523(a)(8) and as a matter of law they were discharged pursuant to this Court's Order of Discharge, [DE 18].

## COUNT II:  DECLARATORY JUDGMENT

77. The Defendant represented the bar study loans as non-dischargeable student loans.

78. Plaintiff requests declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that the bar study loans are a dischargeable debt and in fact were discharged under this Court's Order of Discharge, [DE 18].

Van Horn Law Group P.A.
330 N. Andrews Ave. Ste. 450 Fort Lauderdale, FL 33301

## COUNT III:  DEFENDANT'S VIOLATION OF THE DISCHARGE ORDER

79. The bar study loans were discharged under this Court's Order of discharge because they were unsecured private consumer loans instead of a student loan or a qualified education loan, which is non-dischargable.

80. Defendant received notice of this Court's Order of Discharge on October 16, 2015, [DE 19].

81. Defendant knew the bar study loans were private student loans instead of qualified education loans under § 523(a)(8)(B).

82. Nonetheless, the Defendant ignored this Court's Order of Discharge and attempted to collect the bar study loans from the Plaintiff.

83. Under 11 U.S.C. § 524, the Defendant violated this Court's Order of Discharge

84. Plaintiff requests this Court to cite the Defendant for civil contempt and order it to pay damages for the arrogant disregard of this Court's Order of Discharge and its willful violation of the discharge injunction.

## COUNT IV:  DEFENDANT'S VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227(b)(1)

85. Upon information and belief, Defendant consented to and has knowledge and control of the activities of its agents and of the activities of its agents and representatives, supervisors, managers, affiliates, subsidiaries, divisions, employees, servants, partners, agents, vendors, assignees, transferees, collectors and/or contractors in their actions related to the servicing and collection of the alleged account.

86. Upon information and belief, Defendant had knowledge of all actions taken by its agents and subsidiaries and specifically instructed and/or conspired with them to take such actions as were ultimately taken in regards to Plaintiff.

Van Horn Law Group P.A.
330 N. Andrews Ave. Ste. 450 Fort Lauderdale, FL 33301

87. Each call Defendant, or an agent on behalf of Defendant, made to the Plaintiff was made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

88. Defendant has a corporate policy to use an automatic telephone dialing system or a prerecorded or artificial voice to individuals just as they did to the Plaintiff's cellular telephone in this case. *McCaskill v. Navient Sols., Inc.*, No. 8:15-cv-1559-T-33TBM, 2016 U.S. Dist. LEXIS 46542, at *11 (M.D. Fla. Apr. 6, 2016) ("The parties agree that [Navient] placed 249 phone calls to the plaintiff's cell phone using an automated telephone dialing system.").

89. None of the illegal phone calls made by Defendant were for emergency purposes.

90. Defendant willfully violated 47 U.S.C. § 227(b)(1) when it made dozens of calls to the Plaintiff's cell phone, either directly or through the actions of others, using an automatic telephone dialing system or pre-recorded message without the prior express consent of the Plaintiff.

## COUNT V: DEFENDANT'S VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)

91. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

92. Plaintiff is a "consumer" as defined by Fla. Stat. § 559.55(8) when she entered into a bar study loan for persona, household, or family purposes.

93. Defendant is a "person" as defined under the FCCPA.

94. Defendant expressly and willfully claimed and/or threatened to enforce an alleged debt owed by Plaintiff when it sent letters to the Plaintiff demanding payment of a debt that was discharged in bankruptcy. *See* Fla. Stat. § 559.72(9) (stating that it is unlawful for a debt

collector to "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist").

95. Defendant knew that the debt was discharged in bankruptcy, the bar study loans were dischargeable private consumer loans, and that the debt was nonexistent, inaccurate or invalid, yet it nonetheless attempted to collect the debt from Plaintiff.

96. As a result of the above violations of the FCCPA, the Defendant is liable to the Plaintiff for actual damages as well as statutory damages of $1,000.00 per named Defendant found liable, together with attorneys' fees and all costs of Plaintiff's representation.

## COUNT VI: DEFENDANT'S VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT §§ 1692e, 1692f

97. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

98. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) when she entered into a bar study loan with Sallie Mae.

99. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) when it received assignment of Sallie Mae's servicing rights and attempted to collect a debt from Plaintiff for bar study loans. The Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. In its debt collection letter to Plaintiff, Defendant disclosed it was an "attempt to collect a debt and that any information obtained will be used for that purpose."

100. Defendant engaged in "communication" with the Plaintiff as defined by 15 U.S.C. § 1692a(2) when it sent the debt collection letter to Plaintiff demanding payment for an amount not owed.

101. Defendant violated 15 U.S.C. § 1692e when it made false, deceptive, and misleading representations about the character and amount of the debt that the Plaintiff allegedly owed because the debt was discharged in bankruptcy. The Defendant also violated § 1692f when it sent the debt collection letters to the Plaintiff advising her that the bar study loans were not discharged in bankruptcy.

102. Defendant violated 15 U.S.C. § 1692f when it demanded the Plaintiff pay an amount not owed because it was discharged in bankruptcy.

103. As a result of the Defendant's FDCPA violations, Plaintiff suffered substantial damage, including but not limited to financial damage incurred from the Defendant's illegal billing practices.

**JURY DEMAND AND RESERVATION OF PUNITIVE DAMAGES**

104. Under Rule 38 of the Federal Rules of Civil Procedure and Rule 9015 of the Federal Rules of Bankruptcy Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

105. Plaintiff reserves the right to amend her Complaint and add a claim for punitive damages.

**REQUESTED RELIEF**

Wherefore, the Plaintiff respectfully requests this Court to enter judgment against the Defendant for all of the following:

   a. That Plaintiff be awarded actual damages;

   b. That the Plaintiff be awarded statutory damages;

   c. That the Plaintiff be awarded costs and attorneys' fees;

d. That the Court enter a judgment permanently enjoining the Defendant from engaging in or relying upon telephone debt collection activities that violate the FDCPA, TCPA, and FCCPA;

e. That, should the Court permit the Defendant to engage in or rely on telephone debt collection, it enter a judgment requiring it to adopt measures to ensure FDCPA, TCPA and FCCPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that the Defendant comply with those measures;

f. That the Court enter a judgment awarding any other injunctive relief necessary to ensure the Defendant's compliance with the FDCPA, TCPA, and FCCPA;

g. That the Court enter a judgment awarding declaratory relief that the bar study loans were discharged by this Court's Order of Discharge;

h. That the Court enter a judgment awarding the Plaintiff damages

i. That Defendant and its agents, or anyone acting on their behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used in this proceeding;

j. That the Court award prepetition and post-judgment interest; and

k. Such other and further relief as the Court deems just and proper.

DATED:  June 9, 2016                                      Respectfully submitted,

**Van Horn Law Group, P.A.**
330 N. Andrews Ave., Suite 450
Fort Lauderdale, Florida 33301
(954) 765-3166
(954) 756-7103 (facsimile)

By:  */s/ Chad T. Van Horn*
**Chad T. Van Horn, Esq.**
Florida Bar No. 64500
Email: Chad@cvhlawgroup.com

**Allison Cucinotta, Esq.**
Florida Bar No. 118617
Email: Allison@cvhlawgroup.com