

**ORDERED in the Southern District of Florida on March 3, 2017.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:

VERHONDA K. WILLIAMS,

      Debtor.

_____/

VERHONDA K. WILLIAMS,

      Plaintiff,

v.

NAVIENT SOLUTIONS, LLC,

      Defendant.

_____/

Case No. 15-22082-EPK
Chapter 7

Adv. Proc. No. 16-01244-EPK

### <u>ORDER GRANTING MOTION TO COMPEL ARBITRATION</u>

This matter came before the Court for hearing on December 14, 2016 upon the *Motion to Determine Designation of Claims* [ECF No. 54] (the "Motion to Designate Claims") filed by Defendant Navient Solutions, LLC f/k/a Navient Solutions, Inc. ("NSI"), *Defendant Navient Solutions, Inc.'s Motion to Compel Arbitration of All Claims and Dismiss or Stay Pending Arbitration and Incorporated Memorandum of Law* [ECF No. 63] (as supplemented by ECF

No. 73, referenced below, the "Motion to Compel Arbitration"), *Plaintiff's Response to Defendant's Motion to Compel Arbitration of All Claims and Dismiss or Stay Pending Arbitration and Incorporated Memorandum of Law (De 63)* [ECF No. 72] (the "Response") filed by Verhonda K. Williams (the "Plaintiff"), and *Defendant Navient Solutions, Inc.'s Reply in Support of Motion to Compel Arbitration of All Claims and Dismiss or Stay Pending Arbitration* [ECF No. 73].

In the Motion to Compel Arbitration, NSI requests the Court to compel individual arbitration of Counts I, II and III of the Plaintiff's *Second Amended Class Action Complaint for Damages and Demand for Jury Trial* [ECF No. 28] (the "Second Amended Complaint"). NSI also requests this Court to dismiss the above-captioned adversary proceeding with prejudice or, in the alternative, stay this proceeding pending resolution of the arbitration. In her Response, the Plaintiff first argues that the promissory notes between the Plaintiff and NSI, and the arbitration and class action waiver provision contained therein, were discharged in her chapter 7 bankruptcy case. Even if such provisions were not discharged in her chapter 7 bankruptcy case, the Plaintiff next argues that the Court should deny arbitration of the claims presented in Counts I, II and III because arbitration of such matters, which involve determining whether certain claims were discharged in her chapter 7 case and enforcing this Court's order of discharge, would present an inherent conflict with the Bankruptcy Code.

At the conclusion of the December 14, 2016 hearing, the Court determined the issues raised in the Motion to Compel Arbitration were fully briefed and took the Motion to Compel Arbitration and the related Motion to Designate Claims under advisement. The Court did not request further briefing.

Upon consideration of the Motion to Compel Arbitration and relevant law, the Court rules that the arbitration and class action waiver provisions contained in the notes given by the Plaintiff in favor of NSI were not discharged in the Plaintiff's chapter 7 bankruptcy case.

Even if the Plaintiff's personal obligations under the notes were discharged in her chapter 7 bankruptcy case, the arbitration and class action waiver provisions are severable from those personal obligations and, therefore, remain valid and enforceable.  The Court also rules that no inherent conflict exists between the enforcement of the arbitration and class action waiver provisions and the purposes of the Bankruptcy Code provisions relied upon in Counts I, II and III of Plaintiff's Second Amended Complaint.  The Court will enforce the arbitration and class action waiver provisions and compel arbitration of the claims presented in Counts I, II and III of the Second Amended Complaint.  Finally, in light of the Court's *Order Granting in Part Defendant's Motion to Compel Arbitration and Stay Proceedings, or, Alternatively, to Dismiss Non-Bankruptcy Claims and Granting in Part Motion to Compel Arbitration of All Claims and Dismiss or Stay Pending Arbitration* [ECF No. 67] (the "Order Dismissing Non-Bankruptcy Claims"), which dismissed with prejudice Counts IV, V and VI of the Plaintiff's Second Amended Complaint, the Motion to Designate Claims will be denied as moot.  This adversary proceeding will be dismissed and closed, and the main chapter 7 case will be re-closed.

APPLICABLE LAW

Pursuant to the Federal Arbitration Act ("FAA"), a written arbitration provision in a "contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA further provides that "upon any issue referable to arbitration under an agreement in writing for such arbitration," and "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement," the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  *Id.* at § 3 (emphasis added).

The FAA evinces a "liberal federal policy favoring arbitration agreements." *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005) (quotations omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Accordingly, "courts must 'rigorously enforce' arbitration agreements according to their terms . . . including terms that 'specify *with whom* [the parties] choose to arbitrate their disputes[.]" *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417, 424 (2013) (emphasis in original) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U. S. 213, 221 (1985); *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U. S. 662, 683 (2010)).

However, the FAA's requirement that arbitration agreements be enforced according to their terms may be overridden by a "contrary congressional command." *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987). In *McMahon*, the United States Supreme Court promulgated a three factor test used to determine Congress' intent: "(1) the text of the statute; (2) its legislative history; and (3) whether 'an inherent conflict between arbitration and the underlying purposes [of the statute]' exists." *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002) (quoting *McMahon*, 482 U.S. at 227). The party opposing arbitration has the burden "to show that Congress intended to preclude a waiver of judicial remedies for [the particular claim] at issue." *McMahon*, 482 U.S. at 227; *see Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

The Eleventh Circuit has previously applied the *McMahon* factors in the bankruptcy context in *Whiting-Turner Contracting Co. v. Elec. Mach. Enter.'s Inc.*, 479 F.3d 791 (11th Cir. 2007). In *Whiting-Turner*, the Eleventh Circuit found "no evidence within the text or in the legislative history that Congress intended to create an exception to the FAA in the Bankruptcy Code." *Whiting-Turner*, 479 F.3d at 796. Therefore, the Eleventh Circuit

directed the bankruptcy courts to "look to the third factor of the *McMahon* test and examine whether an inherent conflict exists between arbitration and the underlying purposes of the Bankruptcy Code." *Id*. From there, the Eleventh Circuit explained:

> Courts addressing the issue of whether arbitration inherently conflicts with the Bankruptcy Code distinguish between core and non-core proceedings. In general, bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding. However, even if a proceeding is determined to be a core proceeding, the bankruptcy court must still analyze whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code.

*Id*. (internal citations omitted).

FACTS

On July 2, 2015, the Plaintiff filed a voluntary petition under chapter 7 of the Bankruptcy Code. ECF No. 1, Case No. 15-22082-EPK. NSI was listed in the petition as a creditor holding an unsecured, nonpriority claim for "student loans." *Id*. On October 14, 2015, the Court entered its standard order discharging the Plaintiff of all obligations dischargeable under section[1] 727. ECF No. 18, Case No. 15-22082-EPK.

On April 13, 2016, the Plaintiff filed her *Motion to Reopen Chapter 7 Case to File Adversary Proceeding* [ECF No. 21, Case No. 15-22082-EPK] for the purpose of filing an adversary complaint against NSI seeking a determination that her scheduled student loan debt had been discharged and that NSI had violated the discharge order by attempting to collect it. On May 6, 2016, the Court entered its *Order Granting Motion to Reopen Chapter 7 Case to File an Adversary Proceeding* [ECF No. 24, Case No. 15-22082-EPK]. On June 1, 2016, the Plaintiff commenced the above-captioned adversary proceeding.

Counts I, II and III of the Plaintiff's Second Amended Complaint seek a determination that her scheduled student loan debt is dischargeable, a declaration to the same effect, and

---

[1] Unless otherwise indicated, the term "section" or "sections" refers to the given section or sections of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*.

an order holding NSI in contempt for attempting to collect the student loan debt along with an award of damages.[2]  The Plaintiff asserts, purportedly on behalf of a putative statewide class of similarly situated persons, that her bar study loans serviced by NSI are not "qualified education loans" under section 523(a)(8) and, therefore, were discharged in her chapter 7 bankruptcy case.  The Plaintiff next asserts that NSI violated the discharge order pursuant to section 524(a)(2) by mailing monthly statements to the Plaintiff and by making telephone calls to the Plaintiff in an attempt to collect such loans.

Relying on the arbitration and class action waiver provisions contained in the two promissory notes signed by the Plaintiff, NSI filed the present Motion to Compel Arbitration. The identically-worded arbitration and class action waiver provisions read as follows:

> **T. Arbitration Agreement.**  To the extent permitted under federal law, [the Plaintiff] and [NSI] agree that either party may elect to arbitrate - and require the other party to arbitrate - any Claim under the following terms and conditions. This Arbitration Agreement is part of the Bar Study Loan Promissory Note ("Note").
> . . .
> 2. IMPORTANT WAIVERS: If [the Plaintiff] or [NSI] elect to arbitrate a Claim, [the Plaintiff] and [NSI] both waive the right to: (1) have a court or a jury decide the Claim; (2) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, WHETHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR OTHERWISE; (3) ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; OR (4) JOIN OR CONSOLIDATE CLAIM(S) WITH CLAIMS INVOLVING ANY OTHER PERSON IN COURT OR IN ARBITRATION.  Other rights are more limited in arbitration than in court or are not available in arbitration.  The waivers in subsections (2)-(4) above are called the "Class Action and Multi-Party Waivers."  The arbitrator shall have no authority to conduct any arbitration inconsistent with the Class Action and Multi-Party Waivers.

ECF No. 63, Exh. A (emphasis in original) (the "Arbitration and Class Action Waiver Agreement").  The term "Claim" is defined in the notes as "any legal claim, dispute or

---

[2] The remaining counts of the Plaintiff's Second Amended Complaint, Counts IV, V and VI, sought relief under the Telephone Consumer Protection Act (47 U.S.C. §227(b)(1)), the Florida Consumer Collection Practices Act (Florida Statutes § 559.72(9)) and the Fair Debt Collection Practices Act (15 U.S.C. § 1692).  Those counts have been dismissed with prejudice and are not at issue here.  *See* Order Dismissing Non-Bankruptcy Claims [ECF No. 67].

controversy between [the Plaintiff] and [NSI] that arises from or relates in any way to this Note." *Id*. In summary, the Arbitration and Class Action Waiver Agreement provides that any past, present or future legal disputes and any claims of any kind, including statutory and common law claims and claims for equitable relief, that relate in any way to the promissory notes signed by the Plaintiff, may be resolved by binding arbitration, on an individual rather than class basis, at the option of either party.

The Plaintiff argues that the promissory notes between the Plaintiff and NSI, and the Arbitration and Class Action Waiver Agreement contained therein, were discharged in her chapter 7 bankruptcy case. Even if such provisions were not discharged in her chapter 7 bankruptcy case, the Plaintiff argues that the Court should still deny arbitration because arbitration of the Plaintiff's dischargeability claims would inherently conflict with the Bankruptcy Code. In its simplest form, the Plaintiff's argument is that the FAA must yield to the Bankruptcy Code in the context of section 523(a)(8) and section 524(a)(2).

## ANALYSIS

The Plaintiff first challenges the continued validity of the Arbitration and Class Action Waiver Agreement. The Plaintiff concedes that the Arbitration and Class Action Waiver Agreement was, absent her bankruptcy discharge, generally enforceable under applicable law. However, the Plaintiff argues that the order of discharge in her chapter 7 case discharged not only her monetary liability under the notes but also every contractual provision in the notes, including the Arbitration and Class Action Waiver Agreement, making it no longer enforceable against her. Neither the text of the Bankruptcy Code nor applicable case law supports this argument. Even if the student loan debts at issue here are in fact subject to discharge,[3] a discharge entered under section 727 relieves a debtor only of his or

---

[3] It appears that the question of whether the student loan obligations held by NSI were discharged under section 523(a)(8) is a legal question that might be determined on a motion for summary judgment. It seems doubtful that

her personal obligations on debts that existed on the petition date.  The entry of a chapter 7 discharge does not vitiate the effectiveness of an otherwise binding agreement to arbitrate matters relating to a claim that may or may not be subject to the discharge.  *Belton v. Citigroup Inc. (In re Belton)*, 2015 U.S. Dist. LEXIS 144371, at **8-9 (S.D.N.Y. Oct. 14, 2015); *see Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("[A] party's challenge to . . . [a] contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."); *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 106, 110-11 (2d Cir. 2006) (enforcing an arbitration clause even though the plaintiff had already been granted a chapter 7 discharge).  "As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."  *Jackson*, 561 U.S. at 70-71.  The discharge entered in the Plaintiff's chapter 7 case has no impact on the viability of the Arbitration and Class Action Waiver Agreement.

The next step in the Court's analysis is to consider whether an inherent conflict exists between enforcing the Arbitration and Class Action Waiver Agreement on the one hand and sections 523(a)(8) and 524(a)(2) of the Bankruptcy Code on the other.  NSI argues that, in light of recent United States Supreme Court precedent, this Court need only recognize that the Bankruptcy Code contains no explicit prohibition of arbitration in bankruptcy matters to determine that there is no "contrary congressional command" and that the Court must then order that Counts I, II and III of the Second Amended Complaint are subject to binding, individual arbitration.  NSI argues that the Supreme Court's decision in *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 104 (2012) abrogated the inherent conflict analysis previously

---

arbitration will present a more efficient resolution of the matter than continued litigation in this adversary proceeding.  Indeed, the Court perceives the present Motion to Compel Arbitration as, to a great extent, an attempt by NSI to obtain an order citable elsewhere stating that arbitration clauses are *per se* enforceable in the bankruptcy context, without the need to address the issue of inherent conflict, an argument discounted by the Court below.

required by *McMahon* and, by extension, the Eleventh Circuit's decision in *Whiting-Turner*, 479 F.3d 791 (11th Cir. 2007), which applied the *McMahon* factors in the bankruptcy context. For this proposition, NSI relies on *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326 (11th Cir. 2014).

In *CompuCredit*, the United States Supreme Court held that the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*, did not preclude enforcement of an arbitration agreement in a lawsuit alleging violations of the CROA "[b]ecause the CROA is silent on whether claims under the [CROA] can proceed in an arbitrable forum[.]" *CompuCredit*, 565 U.S. at 104. The Supreme Court cited *McMahon* for the proposition that "[the FAA] requires courts to enforce agreements to arbitrate according to their terms . . . even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Id*. at 98 (citing *McMahon*, 482 U.S. at 226). In its ruling, the Supreme Court did not specifically reference *McMahon*'s three factors for determining whether a "contrary congressional command" existed. Rather, the Supreme Court looked only to the text of the CROA to determine whether CROA claims could proceed in an arbitrable forum, and did not address the CROA's legislative history or whether there was an inherent conflict between the CROA and FAA. *See id*. at 98-104.

NSI argues that the failure of the Supreme Court in *CompuCredit* to specifically apply the *McMahon* factors, or to look past the text of the applicable statute, evidences an intent by the Supreme Court to abrogate *McMahon* and its inherent conflict analysis. There is nothing in the *CompuCredit* decision that would cause this Court to so conclude.

First, the reason the Supreme Court did not consider legislative history or apply a more extensive inherent conflict analysis in *CompuCredit* is because those issues were not before the Supreme Court for consideration. In *CompuCredit*, the parties opposing

arbitration did not rely on the CROA's legislative history nor did they raise an inherent conflict challenge. "Consequently, the sole question for the [Supreme] Court [was] whether the text of the CROA precludes arbitration with sufficient clarity to override the operation of the FAA." *Brief for Petitioners* at 18, *CompuCredit Corp. v. Greenwood*, 565 U.S. 95 (2012) (No. 10-948), 2011 WL 2533009, at *18. It is not surprising, then, that the Supreme Court failed to address matters not before it for decision. Indeed, Justice Sotomayor specifically drew attention to this issue in her concurrence. Citing *McMahon*'s three factor analysis, Justice Sotomayor stated that "the [CROA]'s text is not dispositive, and [the parties opposing arbitration] identify nothing in the legislative history or purpose of the [CROA] that would tip the balance of the scale in favor of their interpretation." *CompuCredit*, 565 U.S. at 109-10 (Sotomayor, J., concurring in the judgment).

Second, the Supreme Court does not overturn its own precedent in a backhanded way. If the Supreme Court intended to set aside *McMahon*, it would have done so with appropriate consideration and clarity. *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 365 (2010) (explicitly holding, after "[d]ue consideration," that prior Supreme Court precedent "should be and now is overruled."); *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("We approach the reconsideration of decisions of this Court with the utmost caution."); *Brown v. Bd. of Educ.*, 347 U.S. 483, 494-95 (1954) (explicitly rejecting prior Supreme Court precedent in *Plessy v. Fergusson*, 163 U.S. 537 (1896)). Indeed, the Supreme Court has subsequently cited *CompuCredit*, quoting *McMahon*, for the proposition that courts must enforce arbitration agreements unless the FAA's mandate has been overridden by a contrary congressional command, without in any way suggesting that the three-factor analysis under *McMahon* is no longer required. *See Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309, 186 L.

Ed. 2d 417, 424 (2013). Contrary to NSI's argument, *CompuCredit* did not impliedly overrule *McMahon*. *See In re Belton*, 2015 U.S. Dist. LEXIS 144371, at **12-14.[4]

*Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326 (11th Cir. 2014) is the only decision of the Eleventh Circuit to analyze *CompuCredit*. In *Walthour*, the Eleventh Circuit considered "whether an arbitration agreement, which waives an employee's ability to bring a collective action under the Fair Labor Standards Act [("FLSA")], is enforceable under the Federal Arbitration Act." *Walthour*, 745 F.3d at 1327. After favorably citing the *McMahon* factors for determining whether a "contrary congressional command" exists, the court in *Walthour* recognized that "*CompuCredit* sheds further light on what constitutes a 'contrary congressional command.'" *Id.* at 1331. The Eleventh Circuit continued:

> Although *CompuCredit* did not involve a waiver of the statutory right to bring a collective action under FLSA § 16(b), the decision suggests that the Supreme Court would focus primarily on the statutory text of the FLSA to determine whether that text precludes a waiver of the statutory right to bring a collective action. . . . Accordingly, we turn to the text of the FLSA.

*Id.* at 1331-32 (citations omitted). NSI argues that, based on the Eleventh Circuit's discussion of *CompuCredit*, "it is likely that, if posed with a similar question now, the Eleventh Circuit would not follow *Whiting-Turner*'s holding [applying *McMahon* in the bankruptcy context]." NSI's view of *Walthour*, however, fails to take account of the Eleventh Circuit's entire analysis in that decision.

Notably, after discussing *CompuCredit* and finding that the text of the FLSA contains no explicit provision precluding arbitration or a waiver of the right to a collective action, the Eleventh Circuit in *Walthour* proceeded to analyze the legislative history and the purpose of the FLSA. *See id.* at 1334-36. Ultimately, the Eleventh Circuit concluded: "After examining the FLSA's text, legislative history, purposes, and these Supreme Court decisions [examining

---

[4] The decision cited by NSI in support of this contention is not well founded. *See Blackburn v. Capital Transaction Grp., Inc.,* No. 2:13-cv-98, 2014 U.S. Dist. LEXIS 30310, at *9-11 (E.D. Tenn. Mar. 10, 2014).

the specific language used in FLSA § 16(b)], we discern no 'contrary congressional command' that precludes the enforcement of [the] Arbitration Agreements and their collective action waivers." *Id*. at 1334. In other words, the Eleventh Circuit applied the *McMahon* factors to the case before it. Nothing in *Walthour* would cause this Court to conclude that the Eleventh Circuit intended to abandon the full analysis required by the Eleventh Circuit's decision in *Whiting-Turner*.

In *Whiting-Turner*, the Eleventh Circuit directed this Court to "look to the third factor of the *McMahon* test and examine whether an inherent conflict exists between arbitration and the underlying purposes of the Bankruptcy Code." *Whiting-Turner*, 479 F.3d at 796.[5] "Courts addressing the issue of whether arbitration inherently conflicts with the Bankruptcy Code distinguish between core and non-core proceedings." *Id*. If a proceeding is non-core, a court has no discretion to decline to enforce a binding agreement to arbitrate. *See id*. If a proceeding is core, a court may exercise its discretion to decline to enforce an otherwise binding agreement to arbitrate only if enforcing the arbitration agreement would inherently conflict with the underlying purposes of the implicated sections of the Bankruptcy Code. *See id*. Thus, if the claims presented in Counts I, II and III of the Second Amended Complaint present core matters, *Whiting-Turner* imposes an affirmative duty on this Court to assess *McMahon*'s "inherent conflict" factor before it can exercise discretion in denying to compel arbitration. *See id*. at 799 ("Only if the bankruptcy court actually makes a sufficient finding that enforcing an arbitration agreement would inherently conflict with the Bankruptcy Code does it have the discretion to deny enforcement of the arbitration agreement."). Accordingly, the decision of this Court turns on whether the claims presented in Counts I, II and III of the Second Amended Complaint are core matters and, if so, whether enforcing the parties'

---

[5] "Throughout such an inquiry, it should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer*, 500 U.S. at 26 (quotations omitted).

Arbitration and Class Action Waiver Agreement inherently conflicts with the underlying purposes of the sections of the Bankruptcy Code addressed in those claims.

Title 28 provides a non-exclusive list of core matters. *See* 28 U.S.C. § 157(b)(2)(A)-(P).[6]  Even if not explicitly listed, a proceeding may still be core "[i]f the proceeding involves a right created by the federal bankruptcy law [or] is one that would arise only in bankruptcy." *Whiting-Turner*, 479 F.3d at 797.

Counts I, II and III of the Second Amended Complaint address whether certain student loan debts were discharged under section 523(a)(8) and whether NSI's actions in attempting to collect on those debts after entry of discharge violated the discharge injunction under section 524(a)(2).  The determination as to whether a particular debt is excepted from discharge under section 523(a)(8) is a core proceeding.  28 U.S.C.§ 157(b)(2)(I).  Enforcement of the discharge injunction under section 524(a)(2) is also a core proceeding.  *Credit One Fin. v. Anderson (In re Anderson)*, 553 B.R. 221, 228 (S.D.N.Y. 2016) (citing four cases in support).  As all of the claims in Counts I, II and III are core matters, the Court must determine whether enforcing the Arbitration and Class Action Waiver Agreement with regard to such claims would present an inherent conflict with the underlying purposes of sections 523(a)(8) and 524(a)(2).

In support of its contention that arbitration of the claims presented in Counts I, II and III would not inherently conflict with the purposes of the Bankruptcy Code, NSI relies on two cases from the Second Circuit: *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104 (2d Cir. 2006) and *Belton v. Citigroup Inc. (In re Belton)*, 2015 U.S. Dist. LEXIS 144371, 2015 WL 6163083

---

[6] For a complete discussion of bankruptcy jurisdiction and the power of the bankruptcy courts to enter final orders in core and non-core matters, see *British Am. Ins. Co. v. Fullerton (In re British Am. Ins. Co.)*, 488 B.R. 205, 218-21 (Bankr. S.D. Fla. 2013).

(S.D.N.Y. Oct. 14, 2015).  In response, the Plaintiff relies on *Credit One Fin. V. Anderson (In re Anderson)*, 553 B.R. 221 (S.D.N.Y. 2016).

In *Hill*, the debtor authorized her bank to withdraw monies from her account maintained by the bank to pay down the balance she owed the bank on a consumer loan. *Hill*, 436 F.3d at 106.  After the bank made its first withdrawal, the debtor filed her chapter 7 bankruptcy petition.  *Id*.  The bank received notice of the debtor's bankruptcy case, but made a second withdrawal from the debtor's account shortly after the commencement of the bankruptcy case.  *Id*.  The debtor responded by filing an adversary proceeding against the bank, as a putative class action on behalf of herself and others similarly situated, alleging, among other things, violations of the automatic stay imposed by section 362(a).  *Id*.  The bank responded by seeking a stay or dismissal of the action in favor of arbitration, claiming that the account agreement mandated arbitration of the debtor's claims.  *Id*. at 106-07.  The bankruptcy court denied the bank's motion and, on appeal, the district court affirmed the bankruptcy court's decision to deny arbitration of the debtor's claims arising under section 362.  *Id*. at 107.  The bank appealed to the Second Circuit.  *Id*.

The Second Circuit began its analysis by explaining that the *McMahon* factors carve out an exception to the FAA's general mandate favoring arbitration and that, in applying the inherent conflict factor, bankruptcy courts distinguish between core and non-core claims.  *See id*. at 107-09.  Unsurprisingly, the Second Circuit characterized claims for violation of the automatic stay as core matters.  *Id*. at 108-09.  The Second Circuit then turned to determine whether ordering arbitration would inherently conflict with the purposes of the Bankruptcy Code.  *See id*. at 109.  In finding such a conflict did not exist, the Second Circuit explained:

> Although we reach the same conclusion as the lower courts that Hill's § 362[(k)] claim is a core proceeding, we hold that arbitration of her claim would not seriously jeopardize the objectives of the Bankruptcy Code because: (1) Hill's estate has now been fully administered and her debts have been discharged,

so she no longer requires protection of the automatic stay and resolution of the claim would have no effect on her bankruptcy estate; (2) as a purported class action, Hill's claims lack the direct connection to her own bankruptcy case that would weigh in favor of refusing to compel arbitration; and (3) a stay is not so closely related to an injunction that the bankruptcy court is uniquely able to interpret and enforce its provisions.

*Id.*

In explaining its first and "most important[]" factor, the Second Circuit focused on whether compelling arbitration would "interfere with or affect the distribution of the estate." *Id.*  Noting that the debtor's bankruptcy case had been closed and that she had received a discharge, the Second Circuit found that resolution of the debtor's section 362 claim "cannot affect an ongoing reorganization, and arbitration would not conflict with the automatic stay." *Id.* at 110.  This was the case because the bank had reimbursed the debtor for the post-petition withdrawal from her account and, therefore, the automatic stay was no longer needed to ensure her fresh start.  *Id.*  Further, since this was a liquidating chapter 7 case, and not an effort to reorganize the debtor's estate, any damages recovered by the debtor on her claim would be her personal property and not part of her bankruptcy estate.  *Id.*  The Second Circuit ruled that these facts distinguished the debtor's case from cases where "resolution of the arbitrable claims directly implicated matters central to the purposes and policies of the Bankruptcy Code."  *Id.* (citations omitted).  Regarding the second factor, the Second Circuit found the fact that the debtor filed her claim for violation of the automatic stay as a putative class action "demonstrates the lack of close connection between the claim and her own underlying bankruptcy case."  *Id.*  Finally, regarding the third factor, the Second Circuit explained:

> [W]e are not persuaded that a stay, which arises by operation of statutory law and not by any affirmative order of the bankruptcy court, is so closely related to an injunction that the bankruptcy court is uniquely able to interpret and enforce its provisions.  An arbitrator of a § 362[(k)] claim would be asked to interpret and enforce a statute, not an order of the bankruptcy court.

> Arbitration is presumptively an appropriate and competent forum for federal statutory claims.

*Id*. Having considered these three factors, the Second Circuit held that the bankruptcy court did not have discretion to deny the motion to stay or dismiss the proceeding in favor of arbitration. *Id*. at 110-11.

Two decisions of the Southern District of New York apply *Hill* in the context of whether to compel arbitration of claimed violations of the discharge injunction under section 524 and reach opposite conclusions. Considering essentially identical facts, one decision held that an inherent conflict exists, *see In re Belton*, 2015 U.S. Dist. LEXIS 144371, while another decision recently held no such inherent conflict exists. *See In re Anderson*, 553 B.R. 221.[7]

In *Belton*, the court ruled that "arbitrating [the plaintiffs'] Section 524 claims would neither necessarily nor seriously jeopardize the objectives of that section or of the Bankruptcy Code in general." *In re Belton*, 2015 U.S. Dist. LEXIS 144371, at **17-18. The bankruptcy court had interpreted *Hill*'s first factor as requiring a denial of arbitration when a debtor's fresh start is at issue. *Id*. at *19. Because the discharge injunction is necessary to obtain a fresh start, the bankruptcy court read *Hill* as cautioning against arbitration of actions to enforce that injunction. *Id*. However, the district court rejected this interpretation, stating:

> But *Hill* cannot be construed as supporting the notion that arbitration is unavailable whenever the debtor's fresh start is at issue. *Hill* stands for the more modest proposition that claims alleging violations of the Bankruptcy Code should not be arbitrated if those claims are 'integral to [the] bankruptcy court's ability to preserve and equitably distribute assets of the estate' or if arbitration would 'substantially interfere with [the debtor's] efforts to reorganize.' Conversely, under *Hill*, arbitration of claims under the Bankruptcy Code is required when 'arbitration would not interfere with or affect the distribution of the estate' or would not 'affect an ongoing reorganization,' as was the case [in *Hill*].

---

[7] The facts of both cases are identical, and can be summarized as follows: Debtor files voluntary chapter 7 petition. Debtor receives discharge of credit card debt. Debtor subsequently obtains credit report that indicates such debt as "charged off" (*i.e.*, not discharged in bankruptcy). Debtor moves to reopen bankruptcy case. Debtor files section 524 putative class action claim against credit card company for alleged violation of the discharge injunction. Credit card company files motion to compel arbitration pursuant to the terms of the credit card agreement.

*Id*. at **19-20 (emphasis in original) (citations omitted) (quoting *Hill*, 436 F.3d at 109-10).  In

applying this reading of *Hill*, the court in *Belton* held that "arbitration of [the plaintiffs']

Section 524 claims 'would not interfere with or affect the distribution of the estate' and would

not 'affect an ongoing reorganization'" because the plaintiffs had received discharges in their

chapter 7 bankruptcy cases prior to commencing their section 524 claims.  *Id*. at **20-21

(quoting *Hill*, 436 F.3d at 109-10); *see Bigelow v. Green Tree Financial Servicing Corp.*, 2000

U.S. Dist. LEXIS 23598, at *15 (E.D. Cal. Nov. 30, 2000) (holding that because the plaintiff's

section 524 claim was brought two years after she had received a discharge in her chapter 7

bankruptcy case, the "cause[] of action do[es] not address the liquidation of the estate nor the

priority of creditor's claims [and, therefore, t]he Court perceives no adverse effect on the

underlying purposes of the code from enforcing arbitration.").  The court in *Belton* also found

the fact that the plaintiffs had brought their section 524 claims as putative class actions

weighed in favor of compelling arbitration under *Hill*.  *In re Belton*, 2015 U.S. Dist. LEXIS

144371, at *21.

Finally, in applying *Hill*'s third factor—whether the bankruptcy court is uniquely able

to interpret and enforce the underlying statutory claim—the court in *Belton* ruled that a

bankruptcy court is not uniquely able to interpret and enforce a discharge order because such

an order is a form order entered in every case where a discharge is due and is not a unique

order of the bankruptcy court specific to the case.  *Id*. at *22.  The court ruled that the fact

the section 524 claims were brought as putative class actions reinforced the proposition that

arbitrating such claims "would not necessarily or seriously jeopardize the goal of having

bankruptcy courts enforce their own orders."  *Id*.

Recently, another judge of the same district court applied *Hill*'s three factors and

reached exactly the opposite conclusion, that arbitrating a plaintiff's section 524 claim would

necessarily and seriously jeopardize the objectives of that section and the Bankruptcy Code. *In re Anderson*, 553 B.R. at 230-34. In applying *Hill*'s first factor and deciding whether the plaintiff still required protection from the discharge, the court in *Anderson* stated that "[t]he effectiveness of a bankruptcy proceeding . . . relies exclusively on a functioning discharge. In other words, only through enforcement of the discharge order can the discharge provided by the Bankruptcy Court provide the debtor with a 'fresh start,' a central objective to the bankruptcy laws." *Id.* at 231 (footnote omitted) (citations omitted). The court then interpreted *Hill* as follows:

> [T]he discharge is the mechanism through which debtors are protected *after* the resolution of their bankruptcy proceedings and distribution of their estates. Thus, whereas *Hill* 'no longer require[d] the protection of the stay to ensure her fresh start,' the discharge is essential in the post-bankruptcy context, and its objective is still—if not primarily—implicated after the estate is fully administered. In other words, in *Hill*, the automatic stay was at issue, and the automatic stay by definition operates during the debtor's bankruptcy, which explains the *Hill* court's reluctance to hold that an inherent conflict exists where the bankruptcy proceeding had concluded and the estate had been administered. In contrast, the discharge operates post-bankruptcy to ensure the objectives of the bankruptcy are carried out. Therefore, a central purpose of the Bankruptcy Code is implicated by the discharge even after the conclusion of bankruptcy proceedings, and arbitration of a discharge violation would jeopardize this central objective.

*Id*. Accordingly, the court in *Anderson* disagreed with the court in *Belton*'s reading of *Hill*'s first factor: "[T]he Court does not read *Hill* to imply that arbitration is inappropriate only if it would substantially interfere with equitable distribution of the estate assets or debtors' efforts to reorganize." *Id*. at 232. And so the court in *Anderson* held that because the discharge order predominately achieves the objective of providing a debtor with a fresh start, "the question of whether a discharge injunction has been violated is essential to proper functioning of the Bankruptcy Code, and arbitration is inadequate to protect such core, substantive rights granted by the Code." *Id*.; *see Norman v. Applied Card Sys. (In re Norman)*, 2006 Bankr. LEXIS 2576, at **7-8 (Bankr. M.D. Ala. Sept. 29, 2006) ("The question

of whether a discharge injunction issued by the Federal Bankruptcy Court has been violated ought to be decided by a bankruptcy judge and not by an arbitrator.").[8]  On the other hand, the court in *Anderson* found the fact that the plaintiff had brought his section 524 claim as putative class action weighed in favor of compelling arbitration under *Hill*.  *In re Anderson*, 553 B.R. at 233.

Finally, in applying *Hill*'s third factor, the court in *Anderson* distinguished between interpreting and enforcing a statute (the automatic stay in *Hill*) and interpreting and enforcing an affirmative order of a bankruptcy court (the discharge order).  *See id*.  The court reasoned: "As noted in *Hill*, a main objective of the Bankruptcy Code is the 'undisputed power of a bankruptcy court to enforce its own orders.'  Additionally, courts in the Second Circuit consistently recognize the unique power of a bankruptcy court to interpret its own orders." *Id*. (citations omitted) (quoting *Hill*, 436 F.3d at 108-09).  The court ruled that the bankruptcy court is "uniquely suited to interpret its discharge order."  *Id*.  The court in *Anderson* did not consider the fact that the discharge order is a form order to be a material factor in its analysis.

The court in *Anderson* continued its analysis by considering the importance of the uniform application of bankruptcy law.  *See id*. at 234-35.  The bankruptcy court in *Anderson* had relied on the original bankruptcy court decision in *Belton, Belton v. GE Capital Consumer Lending, Inc. (In re Belton)*, 2014 Bankr. LEXIS 4679 (Bankr. S.D.N.Y. Nov. 10, 2014) (hereinafter, "*Belton I*").  *Id*. at 234.  The court in *Anderson* found persuasive the bankruptcy court's emphasis in *Belton I* on "the need for 'complete and consistent relief,' which 'is more likely to occur if [the disputes are] determined by . . . a bankruptcy court [rather] than on an arbitration-by-arbitration basis of separate alleged violations of the discharge.'"  *Id*. (quoting

---

[8] The court in *Anderson* limited its reading of *Hill* to apply only in the context of section 524 claims: "This is not to say that whenever the debtor's fresh start is at issue, arbitration is unavailable; however, in the instant case, where the discharge is so fundamentally related to a debtor's fresh start, this conclusion is warranted."  *In re Anderson*, 553 B.R. at 233.

*Belton I*, 2014 Bankr. LEXIS 4679, at *10).  Given "the broad discretion arbitrators have in deciding whether or not to apply collateral estoppel offensively," the court in *Anderson* stated that uniform application of the Bankruptcy Code is furthered by federal, class action litigation because it was plausible that inconsistent decisions would manifest if multiple violations of the discharge injunction by one creditor were sent to separate arbitrators.  *Id.* at 234-35.[9]

The court in *Anderson* ultimately held that, given *Hill*'s first and third factors weighing against arbitration and the additional consideration of uniform application of the discharge injunction, an inherent conflict existed between the purposes of section 524 and the FAA and, therefore, the bankruptcy court had discretion to decline to compel arbitration. *Id.* at 235.  This Court notes that at the time of entry of this Order, the defendant in *Anderson* had appealed the district court's order affirming the bankruptcy court's order denying arbitration and such appeal was still pending before the Second Circuit.

In the present case, the Court rules that enforcement of the parties' Arbitration and Class Action Waiver Agreement does not inherently conflict with the underlying purposes of sections 523(a)(8) or 524(a)(2).  With one exception, noted below, the Court adopts the analysis presented in *In re Belton*, 2015 U.S. Dist. LEXIS 144371, because it is better aligned with the federal policy favoring arbitration.  As the Plaintiff received a discharge in her chapter 7 bankruptcy case prior to the commencement of this adversary proceeding, arbitration of the Plaintiff's claims will not interfere with or affect the distribution of the estate and will not affect an ongoing reorganization.  Arbitration does not interfere with or

---

[9] On appeal, the court in *Belton* rejected the argument that "arbitrating [the plaintiffs' section 524] claims would necessarily and seriously jeopardize the Bankruptcy Code's goal of avoiding piecemeal litigation" because, even though the trustee had undertaken investigation in the plaintiffs' main bankruptcy cases, the trustee had not intervened in the plaintiffs' adversary proceedings and "[s]ending the adversary proceedings to arbitration, therefore, will not create any more duplicative proceedings than already exist."  *In re Belton*, 2015 U.S. Dist. LEXIS 144371, at **23-24.

affect the preservation of estate assets or the determination of the priority of creditor's claims. The fact that the Plaintiff brought her section 523(a)(8) and section 524(a)(2) claims on behalf of a putative class weighs in favor of compelling arbitration.

This Court differs from the court in *Belton* as this Court gives no weight to the fact that the discharge order is a form entered in each case where it is applicable. The fact that the order of discharge is a form does not make it any less an order of this Court. But the Court is not now asked to interpret the provisions of the discharge order itself, but instead to interpret a federal statute incorporated into that order. Other federal and state courts routinely interpret federal statutes. Arbitration panels do as well. Importantly, in the present case, this Court does not have exclusive jurisdiction over the determination of whether claims are excepted from discharge under section 523(a), except for claims under sections 523(a)(2), (a)(4) or (a)(6), not applicable here. *See* 11 U.S.C. § 523(c). Other than claims subject to exception from discharge under sections 523(a)(2), (a)(4) or (a)(6), any court of competent jurisdiction may address whether a claim was discharged in bankruptcy. *In re Hamilton*, 2009 Bankr. LEXIS 793, at *1, (Bankr. N.D. Ga. Mar. 23, 2009) (citing *Cummings v. Cummings*, 244 F. 3d 1263 (11th Cir. 2001); *Eden v. Robert A Chapski, Ltd.*, 405 F. 3d 582 (7th Cir. 2005)). There is no reason such matters may not be subject to arbitration.

For the forgoing reasons, the Court ORDERS and ADJUDGES as follows:

1.   The Motion to Compel Arbitration [ECF No. 63] is GRANTED to the extent provided herein.

2.   Counts I, II and III of Plaintiff Verhonda K. Williams' Second Amended Complaint [ECF No. 28] shall be submitted to individual, binding arbitration consistent with the agreements between the parties.

3.   In light of the Court's Order Dismissing Non-Bankruptcy Claims [ECF No. 67], the Motion to Designate Claims [ECF No. 54] is DENIED as moot.

4.      The above-captioned adversary proceeding is DISMISSED and the Clerk of Court is directed to close this adversary proceeding and to re-close the main chapter 7 bankruptcy case, Case No. 15-22082-EPK.

###

Copies furnished to:

Courtney A. McCormick, Esq.

*Courtney A. McCormick, Esq. is directed to serve a conformed copy of this Order on all parties in interest and file a certificate of service with the Court.*